# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NEW LEGION COMPANY, INC.,**<br>    Plaintiff,<br><br>    v.<br><br>**JASBIR SING THANDI d/b/a GLOBAL HAWK INSURANCE COMPANY, et al.,**<br>    Defendants. | **CIVIL ACTION**<br><br>**NO. 18-cv-778** |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                                                                  **May 8 , 2018**

### I.    Introduction

On October 8, 2016, a tractor-trailer owned by Plaintiff New Legion Company, Incorporated, was involved in a trucking accident caused by Defendant Alpha Transport, Inc.. Thereafter, Plaintiff filed suit against Alpha Transport; Defendant Global Hawk Insurance Company ("Global Hawk"), Alpha Transport's purported insurer; Defendant Jasbir Singh Thandi, the owner of Global Hawk; Defendant Greet Bala Presad, the claims manager of Global Hawk; and Defenant Jim Kreason, a claims adjuster for Global Hawk, alleging the following causes of action:

   I)       False Designation of Origin Under the Lanham Act, 15 U.S.C. § 1125(a)

   II)      Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. 201-1, *et seq.*; and

   III)     Fraud.

(Compl. ¶¶ 44-57, ECF 1.)

Defendants have now moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. For the reasons that follow, Defendants' motion to dismiss is **GRANTED WITHOUT PREJUDICE.**

II. Background

A. The Accident

The following facts are taken as true from Plaintiff's Complaint. Plaintiff New Legion Company, Incorporated is a Pennsylvania trucking company that hauls freight for customers in tractor-trailers. (Compl. ¶¶ 2, 20.) On October 8, 2016, Defendant Alpha Transport, Inc. caused a motor vehicle accident involving one of Plaintiff's trailers. (Id. ¶¶ 21-22.) At the scene of the accident, Alpha Transport provided written information from Defendant Jasbir Singh Thandi, an insurance agent, stating that Defendant Global Hawk Insurance Company ("Global Hawk") was Alpha Transport's insurance carrier for commercial trucking motor vehicle accidents. (Id. ¶ 23.) On the basis of this information, Plaintiff was led to believe that Global Hawk was a lawful insurance carrier. (Id. ¶ 25.)

Following the accident, Defendant Jim Kreason, a claims adjuster at Global Hawk, contacted the Plaintiff about damages caused by the accident. (Id. ¶¶ 26, 28.) After some back-and-forth, on June 29, 2017, Kreason sent an e-mail to Plaintiff stating "that the amount of Plaintiff's damages which Global Hawk Insurance Company would pay out" would be $32,000, an amount that Plaintiffs state was an "offer." (Id. ¶¶ 29-30.) Negotiations continued, and Kreason stated in an e-mail dated August 1, 2017 that Global would not pay Plaintiff more than $32,000. (Id. ¶¶ 30-31.) To date, Plaintiff has not been paid its "acknowledged damage amount." (Id. ¶ 32.)

**B. Trademarks and Licensure**

Global Hawk Insurance Company is a federally registered trademark under registration number 4665528 to Singh individually. (Id. ¶ 33.) When Global Hawk commenced business in California in 2004, a trademark application was already pending for a now-dissolved South Carolina corporation with a name and logo identical to Defendant Global Hawk's. (Id. ¶¶ 18, 38.) This South Carolina corporation, which "became effective" on June 27, 2003 and dissolved on May 4, 2009, filed a trademark application for the name and logo with the United States Patent and Trademark Office at Serial Number 78509344. (Id. ¶ 18.) Plaintiffs assert, upon information and belief, that Global Hawk Insurance Company was a fictitious tradename that was "confusingly similar to an existing name of a lawful company in South Carolina." (Id. ¶ 40.) Plaintiffs further assert that "[a]s a direct and proximate result of the represntations and trademark of Defendant Global Hawk Insurance Company, the public was led to believe that Global Hawk Insurance Company was a corporation duly organized to underwrite and provide insurance coverage for commercial vehicles and trucks." (Id. at ¶ 35.)

Neither Singh nor Global Hawk was a licensed insurance company in any state, although its website state that Global Hawk offers commercial auto liability and truck liability insurance coverage services. (Id. ¶ 36.) Plaintiff asserts that Defendants Alpha Transport, Presad, and Kreason knew or should have known that Global Hawk was not operating as a lawful insurance company. (Id. ¶¶ 41-42.) In August 2015, the California Department of Insurance "commenced disciplinary action" against Singh "regarding…his licensure as an insurance broker for selling Global Hawk Insurance when he was not licensed to do so." (Id. ¶ 43.)

Plaintiff asserts that all Defendants have "acted in concert, combination or conspiracy to mislead or otherwise cause confusion to the Plaintiff that Global Hawk Insurance Company was

a lawfully licensed insurance company allowed to underwrite and provide insurance coverage for the motor vehicle that involved damages to Plaintiff's property." (Id. ¶ 39.)

### III. Procedural History

Plaintiff filed its Complaint in this Court on February 22, 2018. (Compl., ECF 1.) The Complaint asserted three causes of action:

I) False Designation of Origin Under the Lanham Act, 15 U.S.C. § 1125(a)

II) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. 201-1, *et seq.*; and

III) Fraud.

(Id. ¶¶ 44-57.)

In addition to compensatory and punitive damages and costs, Plaintiff requests injunctive relief barring use of the allegedly infringing trademark, a court order cancelling the registration of the "Global Hawk" trademark and logo to Singh, and a court order imposing an "asset freeze or constructive trust" over "all monies and profits in Defendants [sic] possession which rightfully belong to Plaintiff"; destruction of infringing articles, including termination of Global Hawk's website. (Id. at 10-11.)

Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on March 20, 2018. (Defs.' Mot. to Dismiss, ECF 8.) Plaintiff filed a memorandum in opposition on April 11, 2018. (Pl.'s Opp. to Defs'. Mot. to Dismiss, ECF 9.) Defendants filed a reply on April 24, 2018. (Defs.' Reply in Support of Mot. to Dismiss, ECF 10.) The motion to dismiss is now ripe for decision.

### IV) Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, the Court in Iqbal does explain that while factual allegations must be treated as true, legal conclusions do not. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). When considering a motion to dismiss for failure to state a claim, a court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Hartig Drug Co. Inc. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016).

V) **Analysis**

   **A. Lanham Act**

Defendants asserts that Plaintiff cannot assert a claim under the Lanham Act because it has failed to plead that it sustained an injury to a commercial interest in sales or business reputation that was proximately caused by Defendants' misrepresentations. (Defs.' Mot. to Dismiss at 4, ECF 8.)

Plaintiff, in its Complaint, alleges that the use by Defendant Global Hawk Insurance Company of the name and logo of the South Carolina company led Plaintiff and the public to believe that it was "a corporation duly organized to underwrite and provide insurance coverage

5

for commercial vehicles and trucks," and constituted a false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), which provides as follows:

> **(a) Civil action**
>
> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> > **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The Supreme Court has explained that § 1125(a) "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1384 (2014). False association claims asserted under § 1125(a)(1)(A) are often referred to as "false designation of origin" claims, see Parks LLC v. Tyson Foods, Inc, 863 F.3d 220, 226 (3d Cir. 2017), and the Court therefore assumes that Plaintiff is proceeding under this subsection of the statute.

In Lexmark, which concerned a counterclaim by a manufacturer of parts for "remanufacturers" of toner cartridges, which in turn competed with the plaintiff, the Supreme Court addressed the requirements for stating a false advertising claim under § 1125(a)(1)(B). The court's unanimous opinion began by noting a number of general propositions limiting the circumstances under which plaintiffs may avail themselves of a statutory cause of action such as § 1125(a)(1)(B): "the general prohibition on a litigant's raising another person's legal rights, the

rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Id. at 1386 (quoting Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 12 (2004)). It identified an additional limitation, causation, later in the opinion: "we generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." Id. at 1390.

Turning to the Lanham Act, the court first reviewed what types of plaintiffs fell within the "zone of interests" protected by the statute by reviewing a separate section of the statute, 15 U.S.C. § 1127, which states, in relevant part:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127. Because the court considered the most relevant statutory consideration in typical false advertising cases to be "protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition" and the term "unfair competition" was understood at common law to injuries to sales and business reputation, the court held that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." Lexmark, 134 S. Ct. at 1390 (2014).

The court next addressed proximate cause, construing § 1125(a) to contain a requirement of proximate cause, as it had previously done for many other statutory causes of action. Id.

7

Whether proximate cause exists in the context of a statutory cause of action, the court explained, is essentially a question of "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." Id. In the context of false advertising, the court held that to state a false advertising claim, a plaintiff must allege "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." Id. at 1391. Thus, the court summarized, to state a claim under the Lanham Act for false advertising, "a plaintiff must plead…an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." Id. at 1395.

Neither the Third Circuit nor this Court has addressed whether a plaintiff seeking to pursue a false association claim under § 1125(a)(1)(A) must plead an injury to commercial interest in reputation or sales, as Defendant urges is required. Several district courts, applying Lexmark, have extended the requirement of pleading both an injury to commercial interest in sales or business reputation and proximate causation to false association claims under the Lanham Act. See, e.g., UHS of Delaware, Inc. v. United Health Servs., Inc., 227 F. Supp. 3d 381, 403 (M.D. Pa. 2016); Int'l Found. of Employee Ben. Plans, Inc. v. Cottrell, No. CIV. WDQ-14-1269, 2015 WL 127839, at *3 (D. Md. Jan. 7, 2015).

Whether or not a plaintiff pursuing a Lanham Act false association claim must plead harm to a commercial interest in sales or business reputation, it is clear that, as with any statutory cause of action, such a plaintiff must plead specific facts to establish proximate causation, as plausible between the purported false association and the harm to Plaintiff, which Plaintiff did not do in this Complaint. As best this Court can gather, the only damages Plaintiff alleges are from the trucking accident, which cannot be said to have been proximately caused by Defendant

8

Global Hawk Insurance Company's alleged false association with the South Carolina company of the same name. The Court therefore dismisses Count I without prejudice.

## B. Pennsylvania Unfair Trade Practices and Consumer Protection Law

The Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) provides a private cause of action to "[a]ny person who <u>purchases or leases goods or services primarily for personal, family or household purposes</u> and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice" prohibited by Section 3 of the UTPCPL. 73 Pa. Cons. Stat. § 201-9.2 (a) (emphasis added). Thus, "[t]o establish a claim under the UTPCPL, a plaintiff must prove: (1) he or she purchased or leased goods or services; (2) the goods or services were primarily for personal, family or household purposes; and (3) the plaintiff suffered an ascertainable loss as a result of the defendant's unlawful, deceptive act," as well as "that the loss was caused by his or her justifiable reliance on the deceptive conduct." Kelly v. Progressive Advanced Ins. Co., 159 F. Supp. 3d 562, 564 (E.D. Pa. 2016).

Defendants assert that because Plaintiff allegedly leased the tractor-trailer to Alpha Trucking for commercial purchases (a fact unmentioned in the Complaint) and the insurance policy at issue was for commercial trucking insurance, Plaintiff falls outside the scope of the statute because the purchase or lease was not for "personal, family or household purposes." (Defs.' Mot. to Dismiss at 4-5, ECF 8.)  Pennsylvania courts and the Third Circuit have held that parties who made the relevant purchase or lease while for business or commercial purposes may not assert a UTPCPL claim. See, e.g., Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 242 (3d Cir. 2002) (doctor could not assert UTPCPL deceptive marketing claim for bone screws he had bought for his professional practice); Trackers Raceway, Inc. v. Comstock

9

Agency, Inc., 400 Pa. Super. 432, 440 (1990) (plaintiff failed to state UTPCPL claim where it purchased an insurance policy "for commercial purposes only").

It is not at all clear from the Complaint what Plaintiff, a corporation, "purchase[d] or lease[d]." Plaintiff essentially concedes in its opposition to the motion to dismiss that it is pursuing its UTPCPL claim on the basis of Defendant Alpha Transport's purchase of the allegedly fraudulent insurance, rather than any purchase or lease of its own. See Pl.'s Opp. to Defs'. Mot. to Dismiss, ECF 9 ("it is unclear what was sold to Defendant Alpha Transport"). Moreover, Defendant is correct that Plaintiff states throughout its Complaint that the Global Hawk policy—which was issued to Alpha Transport, a Defendant in this action—was for commercial insurance. Even construing the facts as alleged in the light most favorable to Plaintiff, it cannot be said that whatever purchase or lease Plaintiff might have entered was "primarily for personal, family or household purposes," or that Plaintiff's loss (presumably its damages from the accident) was incurred as a result of its justifiable reliance on Global Hawk's alleged infringing insurance. The Court therefore dismisses Count II without prejudice, with leave to amend.

**C. Fraud**

Defendants assert that Plaintiff has not pled fraud with sufficient particularity, as required by Rule 9(b). Plaintiff does not mention its fraud claim in its opposition to the motion to dismiss.

To state a claim for fraudulent misrepresentation under Pennsylvania law, a plaintiff must state the following:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable

reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009). Fraudulent misrepresentation claims under Pennsylvania law must be pled with particularity under Rule 9(b). Petruska v. Gannon Univ., 462 F.3d 294, 310 (3d Cir. 2006).

In its Complaint, Plaintiff stated that "[a]t the time Defendants jointly and severally, conveyed or otherwise were in contact with Plaintiff, Defendants made misleading and material misrepresentations with the intent to deceive Plaintiff into believing that Defendants were able to provide lawful insurance coverage for the motor vehicle accident that caused damages to Plaintiff's personal property." (Compl. ¶ 55, ECF 1.) It not clear from the Complaint what these "misleading and material misrepresentations" are, who made them, and when. At most, Plaintiff has stated that at the scene of the accident "Defendant Alpha Transport provided written information from" Singh "noting that Defendant Global Hawk Insurance Company was their insurance carrier," and that it never received the $32,000 that Kreason offered to pay out in an e-mail of June 29, 2017. Under Rule 9(b), this is not enough. Count III is therefore dismissed without prejudice, with leave to amend.

**D. Release**

Defendants finally assert that the claims brought by Plaintiff are barred by a release purportedly executed between the parties, which Defendants have attached to their motion to dismiss. (Release, Ex. A to Defs.' Mot. to Dismiss, ECF 8-1.) When considering a motion to dismiss for failure to state a claim, a court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Hartig Drug Co. Inc. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016). Defendants fail to establish that the release attached to

Defendants' motion to dismiss qualifies as one of these, and the Court declines to dismiss the Complaint on this ground.

**VI) Conclusion**

Defendants' motion to dismiss is hereby **GRANTED WITHOUT PREJUDICE**. An appropriate order follows.

O:\Julia.2017\18-778 New Legion\18cv778 MTD Memo.docx